UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02703-SEB-MG |
| | ) | |
| ERIC S. RICHARDS, et al. | ) | |
| | ) | |
| Appellees. | ) | |

**ORDER ON BANKRUPTCY APPEAL**

The United States of America (the "United States"), on behalf of the Internal Revenue Service ("IRS"), appeals the Bankruptcy Court's April 29, 2020 and October 5, 2020 Orders establishing the amount of the IRS's general unsecured claim for the 2018 income tax year in the Chapter 12 bankruptcy of Eric S. and Catherine E. Richards. Specifically, the United States objects to the Bankruptcy Court's application of 11 U.S.C. § 1232, a provision of the Bankruptcy Code which governs the treatment of unsecured claims of the government arising "after the filling of the petition and before the debtor's discharge … as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation …."  The Debtors rejoin that there is no error in the Bankruptcy Court's Orders and that they should therefore be affirmed.

For the reasons detailed below, we <u>AFFIRM</u> the Bankruptcy Court's Orders.[1]

---

[1] This Order is being issued concurrently with our Order in *United States v. Richards*, 1:20-cv-1966-SEB-MG, an appeal of the Bankruptcy Court's decision in a jointly administered Chapter 12 case.

1

**Factual Background**

I.      **Background on the Debtors**

The Debtors, Eric S. ("Eric") and Catherine E. ("Catherine") Richards, submitted their voluntary petition for relief under Chapter 12 of the Bankruptcy Code on May 3, 2018.  Their case was one of three jointly administered Chapter 12 cases filed by members of the Richards family.  Prior to their bankruptcy petition, the Debtors were involved in a family farming business with Eric's parents, Aaron and Angela Richards, and Eric's brother and sister-in-law, Robin and Marianna Richards, which took on significant debt as part of the family's efforts to expand the farm's operations.  After uncontrollable weather conditions and market price declines caused the farming operation to suffer sustained financial losses from 2013 through 2015, the family's primary lender refused to renew their prior loan, forcing the liquidation of the farm's assets beginning in the spring of 2016.

In 2016, virtually all of the family's farm equipment, vehicles, and other personal property assets, including grain inventory, were liquidated, and the proceeds were paid over to the primary lender and to other lenders with specific purchase money security interests in the relevant assets.  In 2018, after filing their bankruptcy petitions, the Richards family sold additional farmland to satisfy their final obligations to their lender. The liquidation of all these assets generated substantial income tax obligations for the Richards family members for the 2016, 2017, and 2018 tax years, which they were unable to pay.  Thus, through their bankruptcy case, the Debtors sought relief from their tax liabilities generated from the asset liquidation.

## II.     The Chapter 12 Plan

The Debtors submitted their "Chapter 12 Plan of Reorganization" (the "Plan"), on July 30, 2018, which was later confirmed without objection on October 22, 2018.  Upon confirmation "all property of the Estate and property treated under the Plan … vest[ed] or re-vest[ed] in the Debtors," pursuant to the terms of their Plan.  APPX 59 § 11.09.  The Plan is silent regarding whether any "off-farm earnings," tax withholdings by employers, payments voluntarily made by the Debtors to the IRS, or a claim for refund would remain property of the estate after confirmation of the Plan.

The Plan recognizes that the Debtors owed amounts to the United States for income taxes arising directly from the sale of farm assets in 2016, 2017, and 2018.  Under the Plan, the Debtors' state and federal tax obligations were divided into two categories: (1) tax liabilities for income arising from the sale, transfer, exchange, or other disposition of any property used in the Debtors' farming operation ("Section 1232 Income"); and (2) tax liabilities arising from other income sources ("Traditional Income").

The Plan provides that tax liabilities arising from Traditional Income would retain priority status and that tax liabilities related to Section 1232 Income would be de-prioritized and treated as general unsecured claims dischargeable upon completion of the Plan if not fully paid.  Specifically, the Plan provides that unpaid income tax obligations related to Traditional Income incurred *prior to* the bankruptcy petition date would retain priority status and be paid in full by the Chapter 12 Trustee within 28 days after confirmation of the Plans ("Priority Tax Liabilities"), while any obligations related to

3

Traditional Income incurred *after* the petition date would be paid by the Debtors directly ("Direct Payment Liabilities").  APPX 51, 58.

Income tax obligations related to Section 1232 income, *regardless of when incurred*, would be de-prioritized and paid by the Chapter 12 Trustee as general unsecured claims that would be discharged if not fully paid upon completion of the Plan. APPX 50–52.  According to the Plan, Section 1232 unsecured claims would be paid on a "pro rata basis" along with other general unsecured claims from a variety of sources. APPX 52, § 3.06.  The Plan further provides that:

> The means of payment described in this Plan are, absent an event of default of this Plan, the exclusive means of post-petition payment of any and all claims, and no creditor shall take action to collect on any claims, whether by offset or otherwise, unless specifically authorized by this Plan.  Any action taken on or between the Petition Date and Confirmation Date shall be reversed and refunded to the appropriate entity if such action is not specifically authorized by this Plan.  This paragraph does not curtail the exercise of a valid right of setoff permitted under § 553.

APPX 58.

The Plan describes the computation of claims amounts subject to Section 1232 treatment[2] as follows: "These [Section 1232] tax claims shall be equal to that amount of tax resulting on the income tax returns of the Debtors as if the taxable income for the sale, exchange, transfer or other disposition of the arming assets was excluded from that

---

[2] The Plan characterizes this computation method as the "marginal method" approved by the Eighth Circuit Court of Appeals in *In re Knudsen*, 581 F.3d 696 (8th Cir. 2009), which "taxes non-qualifying income at lower marginal tax rates [that] results in a lower tax for income not entitled to beneficial treatment and likely makes reorganization more feasible." *Id.* at 715.  To do so, the debtors "calculate a tax return for all income, and then a second, pro forma tax return removing all qualifying sales income." *Id.*

tax return, and from the tax resulting had that taxable income been excluded on the Debtors' returns."  APPX 51.  With regard to the 2016 and 2017 tax years, the Plan further provides that the "computations under the [above] method are employed by a comparison of the Debtors' 2016 and 2017 income tax returns, and a *pro forma* income tax return for the same years."[3]  *Id.*  Although the Plan does not state whether the computation of the claim amount for the 2018 tax year should apply this same method, we understand the Debtors to have used this same method for the 2018 calculation.  The Plan is silent regarding how the Debtors' tax withholdings, payments, and credits for each tax year were to be applied or allocated between that year's income tax return and the corresponding *pro forma* tax return.

Finally, the Plan provides that the Debtors would submit monthly payments of $100.00 from "off-farm earnings" after payment of "ordinary living expenses and income taxes" to the Chapter 12 Trustee.  APPX 150, § 5.07.  These monthly payments were to be used "in paying allowed claims pursuant to [the] Plan."  APPX 150, § 5.05.

### III.   The IRS's Proofs of Claim

The IRS timely filed its proof of claim in the Debtors' bankruptcy case on May 25, 2018, and thereafter amended its proof of claim four times.  APPX 1–4, 213–228.  The IRS filed its first amendment to its proof of claim for the 2016 and 2017 tax years prior to the Plan's confirmation.  APPX 219.  The amended claim identified the IRS's unsecured priority claim in the amount of $288,675.43, and its total unsecured general claim in the

---

[3] The Plan notes that a "*pro forma* return is not a true tax return, but instead an analytical tool" used in this case to determine what taxes would be eligible for Section 1232 treatment. APPX 51.

5

amount of $11,691.37.  APPX 220.  Subsequent to the Plan's confirmation, the Debtors objected to the IRS's first amended claim and sought to have a portion of the 2016 and 2017 tax claims related to Section 1232 Income reclassified as general unsecured claims, consistent with the Plan and Section 1232 of the Bankruptcy Code.  APPX 229–240.  The IRS did not respond to the Debtors' objection, and, on March 21, 2019, the Bankruptcy Court sustained the objection, holding that $5,681.00 of the IRS's claim would be entitled to unsecured priority status, and the remaining amount would be reclassified to unsecured general status.  APPX 242.  Accordingly, the Debtors were afforded approximately $280,000 in tax relief for the 2016 and 2017 income tax years under the Plan and Section 1232.  *Id.*

Shortly thereafter, in accordance with the terms of the Plan and 11 U.S.C. §§ 505 and 1232, the Debtors submitted their federal and state tax returns for the 2018 tax year.  APPX 51–73, 75–94.  As required by § 1232(d), the Debtors served notice of the filing on the IRS by letter dated March 29, 2019, along with a copy of their 2018 federal tax return (the "1080 Return"), which included income from the 2018 sale of farm assets and showed a tax liability of $58,380, and their 2018 *pro forma* federal tax return (the "*Pro Forma* Return"), which excluded the income from the 2018 sale of farm assets and showed a tax liability of $3,399, which, under the Plan, the Debtors were to pay directly.  APPX 51, 75.  However, through a combination of withholding and estimated tax payments, the Debtors inadvertently paid $9,813 to the IRS during 2018, which they contend constitutes a $6,414 overpayment of their 2018 Direct Payment Liabilities

6

($9,813 (what they paid) - $3,399 (what they owed) = $6,414) and is listed on their *Pro Forma* Return as a refund.

The IRS subsequently amended its proof of claim to account for the 2018 tax year. In its second amended claim, the IRS asserted a general unsecured claim of $42,220.00 for the 2018 income tax year (excluding penalties and interest). APPX 4. The IRS did not assert that any amount of its claim for the 2018 tax year was entitled to unsecured priority status, consistent with § 1232. APPX 4, 224, 228. To arrive at its claim for 2018, the IRS allocated the Debtors' tax withholdings, payments, and credits for the year ($9,813), first, to the assessed tax due on the Debtors *pro forma* return, which reduced that amount to $0. Then, the IRS allocated the remaining withholdings, payments, and credits ($6,414) to the Debtors' outstanding tax liability for 2018 ($48,634), thereby reducing its claim to $42,220, excluding penalties and interest. However, because of a processing error, the IRS's initial calculation of its claim for the 2018 tax year inadvertently excluded $6,347 in net investment income tax the Debtors reported on their tax return. APPX 35–38.

### IV.   The Claims Objection Process

On December 20, 2019, the Debtors objected to the IRS's second amended claim on grounds that it should be increased by the amount of the $6,414 overpayment and also by the additional $6,347 of investment income tax. Accordingly, the Debtors sought to adjust the claim to $54,981 and requested that the Bankruptcy Court direct the IRS to issue the $6,414 refund to them or reduce distributions to the IRS until the refund obligation had been satisfied. In support of their objection, the Debtors argued that the

IRS had improperly "offset" the $6,414 overpayment in calculating its unsecured general

claim for 2018. The United States responded to the objection on the IRS's behalf,

arguing that the IRS's claim should be allowed as filed, that the Bankruptcy Court lacked

jurisdiction to compel the issuance of a refund or credit of an overpayment, and that the

Debtors were not entitled to the refund or credit of the overpayment shown on their *pro

forma* return as a matter of law. APPX 14–20.

After a hearing on the matter, on April 29, 2020, the Bankruptcy Court entered its

Order sustaining the Debtors' objection "to the extent the 2018 Refund was applied to the

IRS's claim in a manner other than provided for under the confirmed plan." APPX 30–

31. Specifically, the Bankruptcy Court held that the IRS, in applying the refund shown

on the Debtors' *pro forma* return to their outstanding tax liability for 2018, exercised a

"setoff" that was "not of the kind 'permitted under § 553,'" which violated the Plan's

prohibition against creditors taking any action "to collect on any claim, whether by offset

or otherwise, unless specifically authorized by this Plan." APPX 27. However, the

Bankruptcy Court held that it did not have jurisdiction to adjudicate the Debtors' refund

claim for 2018 because the refund was not "property of the estate" under the turnover

provisions of 11 U.S.C. §§ 542 and 541(a), and there was no indication that the Debtors

"followed the appropriate administrative procedures in requesting a refund from the IRS."

APPX 30.

Thereafter, the United States moved the Bankruptcy Court to reconsider its April

29, 2020 Order on two grounds. First, the United States requested that the Bankruptcy

Court correct a factual misstatement in the Order finding that the IRS applied the

Debtors' tax payments for 2018 to the 2016 tax year.  Second, the United States moved the Bankruptcy Court to hold that the Plan and the "marginal-rate method" did not compel the United States to apply the Debtors' tax payments for the 2018 tax year only to their liability shown on their *pro forma* return.  The motion also addressed the processing error in the IRS's initial calculation of its claim and requested that the Bankruptcy Court allow the IRS's general unsecured claim for 2018 in the amount of $48,567.  APPX 32. In the Debtors' response in opposition to the motion to reconsider, they requested that the Bankruptcy Court withdraw its prior holding that it did not have authority to order the turnover of the refund.

On October 5, 2020, the Bankruptcy Court issued its Order granting the United States' motion to reconsider with regard to the factual inaccuracy in the prior order, clarifying that none of the Debtors' tax payments for 2018 were applied to the 2016 tax year, but otherwise denied the motion.  APPX 121–122.  The Bankruptcy Court further held that the overpayment reflected on the *Pro Forma* Return was "property of the estate" and withdrew its prior analyses of 11 U.S.C. §§ 542 and 505(a)(2)(B) and the failure of the Debtors to submit an administrative claim for refund.  APPX 122.  Accordingly, upon reconsideration, the Bankruptcy Court allowed the IRS's 2018 general unsecured tax claim in the amount of $54,981 and ordered that the "chapter 12 trustee … pay distributions to the debtors until the Overpayment has been paid to the debtors."  *Id.*

## V.    The Instant Appeal

On October 20, 2020, the United States filed its notice of appeal of the Bankruptcy Court's April 29, 2020 and October 5, 2020 Orders.  We granted the United States'

motion to consolidate this case with *United States v. Richards*, No. 1:20-cv-1966-SEB-MG for oral argument only, which was held virtually on July 28, 2021.  Attorneys from both sides appeared, as well as the Chapter 12 Trustee.  In addition to presenting oral argument, the parties have fully briefed the issues, and the matter is now ripe for ruling.

## Legal Analysis

### I.      Standard of Review

This Court has power to review final orders of the United States Bankruptcy Court for the Southern District of Indiana pursuant to 28 U.S.C. § 158(a)(1). We review the legal conclusions reached by the Bankruptcy Court *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *In re Midway Airlines, Inc.*, 69 F.3d 792, 795 (7th Cir. 1995). The Bankruptcy Court's findings of fact are reviewed for clear error.  *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998).

### II.     Applicable Law

Section 1232 was enacted by Congress in response to *Hall v. United States*, 566 U.S. 506 (2012), in which the United States Supreme Court held that the predecessor to Section 1232, formerly Section 1222(a)(2)(A), did not apply to federal income tax liability resulting from a debtor's post-petition sale of farm assets because such tax was not "incurred by the estate" and would not otherwise be entitled to priority status under 11 U.S.C. § 507.  *Id.* at 508.  Accordingly, under the majority's holding, such post-petition tax claims could be collected by tax authorities as if they were ordinary tax debts. The dissent, in criticizing the majority opinion, reasoned that the full payment of large

post-petition tax debts could in many cases leave debtors with insufficient assets and income to meet their obligations to other creditors under the Bankruptcy Code, which, in turn would lead to the failure of their bankruptcy case, contrary to the intended purpose of the statute.  *Id.* at 529 (Breyer, J., dissenting).

A few years following *Hall*, on October 26, 2017, Congress enacted the Family Farmer Bankruptcy Clarification Act which added Section 1232 to Chapter 12 of the Bankruptcy Code and made other amendments in order to clarify that tax obligations incurred as the result of the sale, transfer, exchange or other disposition of any property used in a debtor's farming operation, whether that transaction occurred prior to or during a Chapter 12 bankruptcy case, could be de-prioritized and discharged.  Specifically, the text of Section 1232 provides in relevant part as follows:

> (a)  Any unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation—
>
> > (1)  shall be treated as an unsecured claim arising before the date on which the petition is filed;
> >
> > (2)  shall not be entitled to priority under section 507;
> >
> > (3)  shall be provided for under a plan; and
> >
> > (4)  shall be discharged in accordance with section 1228.

11 U.S.C. § 1232(a).

The "goal" of the statute as described at the time it was introduced on the Senate floor was to "relieve family farmers from having their reorganization plans fail because

of certain tax liabilities owed to the government."  163 Cong. Rec. S3216 (daily ed. May

25, 2017) (statement of Sen. Grassley).

## III.  Discussion

The United States argues that the Bankruptcy Court erred in allowing the IRS's

proof of claim in the amount of $54,981, instead of $48,567, and ordering the IRS to

issue the Debtors a refund or credit of any overpayment in the amount of $6,414.

Specifically, the United States argues that the Bankruptcy Court's order disregards the

text of Section 1232, as a plain reading of the statute shows no reference or right to any

"overpayment" or "refund" upon which the Debtors' proof of claim is based.  Rather, the

section applies to "claim[s]" against debtors, which in this case, according to the United

States, is the IRS's "claim" for the Debtors' 2018 tax liability, after crediting payments

and withholdings, and nothing more; it cannot include amounts the Debtors already paid

toward their liability or be based on an amount shown on the *Pro Rata* Return, which is

solely an analytical tool to determine the amount of tax entitled to priority treatment, not

to calculate the amount of underlying liability owed.  The United States claims that the

Bankruptcy Court's order, by creating a new refund right under Section 1232, also

disregards the circumscribed purpose of the statute which is merely to allow Chapter 12

debtors to clear their debts in order to proceed with their bankruptcy case, a purpose it

achieves through its priority-stripping and discharge provisions for pre- and post-petition

claims, not via a right to refund.

In support of its position, the United States relies on a recent decision of the Eighth Circuit Bankruptcy Appellate Panel ("B.A.P.") in the case of *Iowa Department of Revenue v. DeVries*, 621 B.R. 445 (8th Cir. B.A.P. 2020). In *DeVries*, the debtors sought to disgorge withholding payments that the debtors had made to the taxing authorities two years prior to the petition date on account of pre-petition Section 1232 liabilities. *Id.* at 447. Before filing for bankruptcy, the debtors had partially paid the pre-petition Section 1232 liabilities through withholding tax payments. *Id.* Through their Chapter 12 plan, the debtors requested that the bankruptcy court not only discharge the remainder of the unpaid pre-petition Section 1232 liabilities, but also require the taxing authorities to refund those pre-petition partial payments that had been made against the Section 1232 liabilities.[4] *Id.* The Eighth Circuit B.A.P. determined that the Chapter 12 plan requiring the taxing authorities to disgorge pre-petition tax payments could not be confirmed because "nothing in Section 1232 authorizes a debtor's Chapter 12 plan to require a taxing authority to disgorge, refund, or turn over pre-petition withholdings for the benefit of the estate." *Id.* at 448.

However, as the Eighth Circuit B.A.P. recognized in *DeVries*, unlike the circumstances presented there, where the compelled disgorgement of *pre-petition* holdings was at issue *prior* to plan confirmation, here, the sale of property at issue occurred *post-petition* and the case was decided in the context of a claim objection *after* the Plan had been confirmed. Moreover, the Eighth Circuit B.A.P. also recognized in

---

[4] The Debtors here also made partial payments against their pre-petition Section 1232 liabilities, but, unlike the debtors in *DeVries*, have not sought to recover those pre-petition payments.

distinguishing this case from the circumstances in *DeVries* that the Debtors' Plan here specifically addressed the exclusive means of post-petition payment of the IRS's claims "from plan payments and other sources *and prohibited the application of payment advocated by the taxing authority*." *DeVries*, 621 B.R. at 449 (emphasis added).

   We find the distinctions recognized by the *DeVries* Court to be determinative of this appeal.   A post-petition claim, like that at issue here, must be determined in conformity with Section 1232 and the terms of the Plan, to which the IRS raised no objection.  Under the plain language of Section 1232, the Debtors are entitled to deprioritize all their post-petition Section 1232 Liabilities, not just a portion.  To determine the total amount subject to de-prioritization under Section 1232, the Plan provided that the Debtors' income tax liability for a given year was to be divided into two categories, to wit, Direct Payment Liabilities and Section 1232 Liabilities, each of which was to receive its own treatment under the Plan.  The Section 1232 Liabilities, the amount of which was determined through application of the marginal method, were to be deprioritized and treated as a general unsecured claim that would be paid by the Chapter 12 Trustee on a pro rata basis.  The Direct Payment Liabilities were to be paid directly by the Debtors.  The Plan explicitly provided that the means of payment described therein were the exclusive means of post-petition payment of any and all claims and creditors were forbidden to take action to collect on a claim unless that action was authorized by the Plan.  APPX 58.

Applying the marginal method, a comparison of the Debtors' 2018 1040 Return, which included their Section 1232 Income, and the *Pro Forma* Return, excluding their Section 1232 Income, showed a tax liability difference totaling $54,981, the amount that, per the terms of the Plan and in accordance with Section 1232, was to be deprioritized and treated as a general unsecured claim.  The amount of Direct Payment Liabilities not attributable to Section 1232 income, which the *Pro Forma* Return calculated at $3,399, was to be paid directly by the Debtors.  However, through a combination of withholding and estimated tax payments, the Debtors inadvertently paid $9,813 to the IRS during 2018.  The Debtors therefore paid $6,414 more toward Direct Payment Liabilities than the IRS was entitled to collect under the terms of the Plan.

In this context, the Bankruptcy Court correctly found that the IRS was not entitled under the Plan to retain the $6,414 and credit that amount against the 2018 Section 1232 Liabilities.  As discussed above, the Plan explicitly provided that the Debtors were to pay their post-petition tax liabilities for non-Section 1232 income through income withholding or other payments made directly to the IRS.  The Debtors therefore were not authorized to make—nor was the IRS authorized to receive or retain—additional payments on account of the deprioritized tax liabilities related to Section 1232 income.  Rather, the IRS was entitled to receive only its pro rata share of the Plan distributions for the Section 1232 Liabilities.  Because the Plan did not authorize the Debtors to pay more in Direct Payment Liabilities than calculated under the marginal method or authorize the IRS to retain any additional amount, the Bankruptcy Court correctly held under the terms

of the Plan that the IRS was not entitled to apply the $6,414 against the Section 1232
Liabilities in calculating its proof of claim, thus allowing the claim of the IRS for 2018
Section 1232 Liabilities in the amount of $54,981.

Contrary to the United States' arguments otherwise, this result aligns with both the
text and the purpose of Section 1232.  The plain language of Section 1232 requires that
"any unsecured claim" of a governmental unit arising as a result of the post-petition
disposition of farming assets be stripped of its priority and treated as an unsecured claim
arising before the date on which the petition is filed, that the debt be provided for under
the Plan, and that the debt be discharged in accordance with Section 1228 of the
Bankruptcy Code.  11 U.S.C. § 1232(a).  It is this language that the Bankruptcy Court's
Orders enforced.

To find, as the United States urges us to do, that the Bankruptcy Court's holdings
contravene this plain language, we must accept that the IRS's Section 1232 "claim,"
which term is defined under the Bankruptcy Code as "a right to payment," is not equal to
the total tax liability related to the farmland sold by the Debtors in 2018, but rather the
balance that remained after the IRS applied the Debtors' $6,414 against those liabilities.
That can only be true if the "claim" of the IRS against the Debtors for 2018 Section 1232
Liabilities did not arise when the income from the sale of farming assets was generated,
but instead arose only after the 2018 tax year was concluded, all withholding and
estimated tax payments had been made, and the Debtors' 2018 1040 Return had been
filed and processed by the IRS.  As the Bankruptcy Court recognized, however, taxes

arising post-petition were to be paid by the Debtors as they became due; thus, the IRS's "claim" or "right to payment" arose when the income was generated.[5]  The "claim" of the IRS under Section 1232 is therefore equal to the full tax liability incurred related to the farmland sale and Section 1232 mandates that the entirety of this debt be deprioritized and discharged, as the Bankruptcy Court held.

Finally, we are not persuaded by the United States' contention that sovereign immunity bars the relief granted by the Bankruptcy Court in its Order.  Here, the Bankruptcy Court resolved a claim objection as it was required to do under the terms of the Plan.  The claim objection was filed pursuant to Section 502(b) of the Bankruptcy Code, and 11 U.S.C. § 106 of the Bankruptcy Code provides that sovereign immunity is abrogated as to matters arising under Section 502.  Moreover, as the Bankruptcy Court recognized, the claim objection here is based upon the IRS's violation of the terms of the Plan that direct the manner in which tax claims are to be classified and paid.  Section 10.01 of the Plan provides that the Bankruptcy Court retains jurisdiction to "hear and

---

[5] As the Debtors emphasize, this position aligns with the IRS's own characterization of the United States income tax system as a "pay-as-you-go tax system, which means you must pay income tax as you earn or receive your income during the year."  *Topic No. 306 Penalty for Underpayment of Estimated Tax*, https://www.irs.gov/taxtopics/tc306 (last visited Sept. 30, 2021).  Likewise, the Internal Revenue Code provides that individuals are required to make periodic payments against their income tax liabilities throughout the tax year, as taxable income is earned, either through income withholding or estimated tax payments.  *See* I.R.C. § 1, § 6654(c), (d).  The Internal Revenue Manual provides that "[t]axpayers are generally required to pay income tax as income is earned" and taxpayers who either do not have sufficient funds withheld or who fail to make estimated tax payments "may be assessed a penalty for underpayment of estimated tax" the purpose of which "is not so much to penalize the taxpayer as it is to compensate the United States for the use of the money that should have been paid over to the U.S. Treasury.  IRM § 20.1.3.1.1.

determine disputes arising from the Plan or its implementation." Both the Debtors and the IRS, like every other creditor in the case, are bound by the terms of the confirmed Plan under Section 1227 of the Bankruptcy Code, and Section 106(a) abrogates sovereign immunity with respect to Section 1227.

With regard to the portion of the Bankruptcy Court's Order directing the IRS to refund the $6414 to the Debtors, as the Bankruptcy Court recognized, "[a] governmental unit that has filed a proof of claim in a case is deemed to have waived sovereign immunity with respect to a claim against it that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose under [11 U.S.C.] § 106(b)." *United States v. Richards*, 616 B.R. 879, 883 (Bankr. S.D. Ind. 2020). Here, the IRS filed its proof of claim in the Bankruptcy Case, including a claim related to the 2018 tax liabilities of the Debtors, and the refund amount arises out of the same transactions or occurrences that gave rise to the IRS's proof of claim.

The Bankruptcy Court also correctly found that the refund amount constitutes "property of the estate." The $6414 at issue consists of the remaining funds after the IRS applied the Debtors' payments to the tax liabilities related to "off-farm earnings." APX 46, 118-119. Section 5.05 of the Plan provides:

> The off-farm earnings of the Debtors will be utilized for day-to-day living expenses, including monthly mortgage, installment, and lease payments, and post-petition taxes (not including Class 5 § 1232 Unsecured Claims), and to make the Monthly Payments to the Chapter 12 Trustee for use in paying allowed claims pursuant to this Plan as described in Section 5.07 below.

APPX 149-150.

As the Bankruptcy Court recognized, "the Seventh Circuit follows the line of cases that hold that the only property that remains 'property of the estate' post confirmation is that property needed to fund the confirmed plan."  APPX 28-29 (citing *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997)).  In *Heath*, the Seventh Circuit considered Sections 1306 and 1327 of the Bankruptcy Code, applicable in Chapter 13 bankruptcy cases and virtually identical to Sections 1206 and 1227, applicable in Chapter 12 bankruptcy cases such as this, stating "[w]e read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns as much of that property to the debtor's control as is not necessary to the fulfillment of the plan."

Here, the off-farm earnings of the Debtors in this case originally became property of the estate pursuant to Section 1207 of the Bankruptcy Code.  11 U.S.C. § 1207(a)(2). When the Plan was confirmed, all property re-vested in the Debtors, subject to the terms and the payment requirements of the Plan.  The Plan directed the use of the off-farm earnings during the life of the Plan and specifically provided that off-farm earnings could not be used to pay Section 1232 Liabilities.  Thus, as the Debtors argue, in line with the reasoning in *Heath*, the $6414 at issue here constitutes property of the estate because it was part of a payment made from off-farm earnings that are necessary to fund the Plan payment obligations.

Accordingly, we find on these grounds that the Bankruptcy Court's Orders does not wrongfully impinge upon or otherwise constitute a violation of the United States' sovereign immunity.

## IV.   Conclusion

For the reasons detailed above, the Bankruptcy Court's April 29, 2020 and October 5, 2020 Orders are <u>AFFIRMED</u>.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date: _____9/30/2021_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph M. Black, Jr
114 W Tipton
P O Box 846
Seymour, IN 47274-0846

Wendy D. Brewer
FULTZ MADDOX DICKENS PLC
wbrewer@fmdlegal.com

Laura M. Brymer
FULTZ MADDOX HOVIOUS & DICKENS PLC
lbrymer@fmdlegal.com

Samuel Patrick Jones
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
samuel.p.jones@usdoj.gov